Would the court please call the next case? 416-0531, Richard Thompson v. Workers' Compensation Comm'n Counsel, you may proceed. May it please the court, counsel. My name is Steve Knowles. I represent Richard Thompson. Mr. Thompson was a physical education teacher and has been so for some eight years. And during his particular class period, in other words, the class had already begun, was in session, even though there are certain aspects of the class that are not usual and customary. I hate to start out asking you this pointed question. I thought this happened before all the students had emerged from the locker room. Well, that was the point I was making, Your Honor, is this class, the class time, I believe it's undisputed starting, the occurrence occurred five to ten minutes after the class period started. All the students are not in the class because some of the, my understanding and recollection is that some of the older students have to be, they have to change their clothes. And the younger students are not changing their clothes. They combine a significant age difference of children. So you're saying the class started even though some of the students were not in the class. Absolutely, that's correct. And I don't believe that there is any dispute that the class time had started. In fact, it is unrobotted and uncontended that it wasn't started. Now, because of the uniqueness of the classroom, however, not all students were there. So, yes, I believe that that's correct. Okay, coming to the facts of the case, a student runs up a wall, correct? Prior to the time that the teacher decided to run up a wall, correct? That's correct. All right, so the student runs up, had the curriculum began, had anybody been instructed, had he instructed the student to run up the wall? He had not. Okay, so why does he then run up a wall? Well, this individual is charged with a broad job description of building rapport with students, of supervising those students, of handling those students in that classroom, of encouraging those students. And the unrobotted evidence further demonstrates... But he didn't say anything to the student to run up the wall. He didn't encourage the student to do that as part of a classroom demonstration, did he? Actually, it was unrobotted by both himself and the supervisor, who are both educational professionals, incidentally, that this was in line with his job duty, that that was part of what he should have been doing during this class period. Encouraging people to run up a wall. That it was in line with building rapport, which is his job requirement, that it was in line with encouraging students to do their best. Actually, the facts of the case are, a student, after he had done the wall, which he wasn't injured in doing it, after he had done that, a student said, can you go any higher, Mr. So-and-so? Mr. Thompson? And he said, I believe that I can. So somebody challenged the student to be Bart Conner, he's going to go running up a wall and do a backflip? I mean, is that what you're saying? No, I didn't say that. And neither did any of the evidence say that, Justice. The evidence said that it was part of his job to engage and establish rapport, encourage people to do their best, to be competitive, to do those things. Well, where do we draw the line is the question. I think that's a legitimate... A student could do something, horseplay, pretty far out, because sometimes students will do that at that age, okay? Does the teacher then have to do the same thing to build rapport? Is that what you're saying? I don't think so, but I don't perceive it as horseplay. In fact, he didn't perceive it as horseplay. And there's no evidence that it was horseplay. I don't think anyone testified that it was horseplay. No, but I think the commission, in essence... You think that's the reasonable inference, despite the evidence? I think the commission found against him probably on that basis, right? Well, interesting question. I've not seen a case, and it leads me to my point of, actually, when you're where you should be, when you should be there, doing something that advances the employer's interests, Chadwick says that unless you are violating some sort of reasonable rule or known policy, you are acting in the course of your employment. And we don't consider, or shouldn't even question, the fact of whether or not it was negligent, unreasonable, dangerous, not dangerous. It's simply not a question that you arrive at. And I think that that's supported. Look at Chadwick. Look at the facts there. He did not... The deceased did not chain himself on a 70- to 75-foot building. This case represents no more than... Well, you're not suggesting, though, are you, that the fact that an injury happens on the claimant's place of employment automatically establishes that the injury arises out of the employment? You're not saying that, are you? I'll say what I said again. When an individual is where he's supposed to be, he was there, he was in charge of a class that had already commenced. When he is performing a job, when he is where he's supposed to be, when he's supposed to be there, and performing a service to the employer, in other words, he's doing something that is in furtherance of his job description, in accordance with the unrebutted evidence of the case, then he's entitled to recovery. That's, I believe, the holding of every case that I've read, including Chadwick. And there's no dispute of fact. Do you agree that time and place has to do with in the course of rather than arising out of? You're speaking of the time of the occurrence that he was on the job. Doesn't that go to the issue of in the course of? I'm not sure I would agree with that across the board. What's wrong with that statement? Well, I believe that, for example, I believe that the inquiry, that whether something is personal to an individual plaintiff or not has to do with whether or not they were performing some usual, some function that's beneficial to the employer. And where in the course of the employment is normally whether, and is assessed in terms of, I believe that this individual was doing nothing personal, nothing personal, and no evidence to support that he was, which is usually in the course of type of cases is my recollection. I'm sorry. Does the respondent dispute in the course of in this case? It certainly wasn't the basis of the commission. And I believe that to the extent that that were to be, he was certainly, I think the rationale of the commission was somehow, even though this person was doing something that the unrebutted evidence said was furthering the interest of the employer, his risk was so unreasonable that we have to view that as a departure at that instant from the course of his employment. You raise a very good point. Now, let me ask you this question. Does the day's curriculum that was set that day for the instructor to carry out, teacher to carry out, as I understand it, he testified, the claimant testified, did he not, in this case? Yes, he did. I believe he testified. The curriculum activity scheduled for that day was mat ball, which was a variation of kickball and did not involve running up a padded wall. Running up the padded wall wasn't part of the day's curriculum. When does he depart from the curriculum? Well, I think that a fair reading of the evidence is essentially this, that in this class and every other class that he conducted, he wrote, he himself wrote the curriculum for the class, and that the planned activity for that day was kickball. But it was usual and customary that we accumulate as a class, we try to engage in something physical while the other people are getting addressed. Then we go through count of settings, which also, your honor, or justice, was not written, was not committed to this daily curriculum, and then we proceed to do the curriculum. And that was cooperated by his supervisor who said, I've seen him out there, I've seen these folks, I've seen him out there jogging with the students, shooting baskets with the students, playing catch with the students, before the written down daily curriculum actually began. Moreover, he's the individual that's in charge of that daily curriculum. And the supervisor made that clear. No one sets it for him, he sets it himself. All right? Additionally, you know, while he was in this pre-warm-up activity, which was usual and customary, this is what occurred. And his supervisor completely supported the idea that this is in line with this individual's job description and in furtherance of the employer's interest. I can see it lining up, what those, at least those two, was essentially his actual testimony. What would you say, if you had to define, were the employer's interests? Furthering the employer's interest, or the employer's interest. Well, the employer's interest is, and it is actually written in his job description, is to establish rapport with these students. Is to guide them, is to demonstrate for them, is to do all of those things. Is to challenge them, he perceived, I believe was his testimony, to achieve their personal best, okay? To be competitive, to learn sports, to learn those kinds of things. Are you saying he was trying to demonstrate the proper way to run up a wall, or why did he do this? No, I'm saying, I'm saying, at a minimum, at an absolute minimum, he did this. Because in his opinion, as he testified, and as was said before about it, it was no more dangerous than any of the other things they do. It's a padded wall. When we play basketball, we're apt to hit a padded wall. When we shoot layups, we're apt to land on our feet. When we do those kinds of things, that was his testimony, is that this was no more dangerous than anything that we do on a regular basis. As a matter of fact, it's proven out, the 10-year-olds weren't injured. They were doing it. No one else was injured. Just he was injured. And we could be injured engaging in any physical activity. The employer essentially must argue, there could be better ways to establish rapport. Well, then you step right into this negligence question. Better ways to establish rapport. But certainly, there's nothing in this record that would preclude him from participating physically, and it was known that he participated. If I understand your rule, so you have a teacher. So any time somebody is in a PE class, if a teacher wants to jump on some parallel bars, and he's never been on parallel bars in their life, and gets injured, you're saying that should be covered, should be compensated, right? I'm not necessarily saying that. I don't see an analogy between something that is a mere physical move to something that might or could. I'm not certain because I'm no expert on parallel bars, but it may require some sort of expertise in order to master that. I'm not saying that you can't exceed your ability, but to the extent that he would be responsible for training an individual in gymnastics, I would assume that it would be appropriate for him to demonstrate. But he didn't say he was training anybody, did he, when he ran up the wall, that he said he was trying to train somebody? No, he said he was trying to establish rapport, that he didn't view it as dangerous. He said that he was trying to encourage people to do their best. It was a physical activity that he thought was consistent with warming up. And when the child said to him, well, gee, coach, do you think you can go higher? He said, I think I can. I think I can. He played no role. Which could have been a question, your position is, which could have been a question by him in his teaching role to ask a student, do you think you can go higher? Absolutely he could. And absolutely, if he's modeling for a student, which is, according to the testimony, appropriate, he could say, sure, I think I can go higher, if he thought that he could. And what we want to do is jump and say, well, that's showing off. Well, you know, to some degree, that may be this job. I would draw your attention to the recreational individual in the case that we've cited and argued about. You know, he had even a rule that said, you're not to participate with people that are here to play in an organized program. He disobeyed that rule. He disobeyed that rule at the request of another employee, because they wouldn't have been able to play their ball game if he hadn't. I think I wrote that case. Regardless, your Honor, Justice, it is interesting to me that even when the rule was broken, unequivocally, no rule here. You know, and even where he would have subjected himself to the very allegation, you know, you jumped up to spike the ball or do whatever it was you were doing, that's nothing but showing off. That wasn't something the appellate court looked at. Counsel, your time is up, but you will have time in reply. Counsel, you may respond. Thank you. May it please the Court, Counsel, my name is Mary Sabatino. I'm here on behalf of Triopia, who's the employer in this case. We are requesting that you affirm the Commission's decision in its entirety. We think they got it right. I do want to touch briefly on the standard of review, just because there's a lot of it in the brief about whether or not it should be a de novo review. You know, we cited the Orsini case, obviously, that maybe the facts, you know, did he run up the wall, that's not in dispute. But certainly the inferences that can be drawn from that are very much in dispute. Just a cursory review of the brief, the Commission's decision, you can see people are interpreting these facts in very different ways. I wouldn't spend a lot of time on that. Okay. Well, just moving on then, if we're here on manifest weight, which we appear to be in agreement on, then I'm just going to point to some facts that the Commission found compelling. And before you do, can you just explain for us, as exactly as you can, what the record establishes as to the activity that he was engaged in? What exactly he did. Yes. What the layout was in the area that he did it, where the pad was, and what he was attempting to do. Yes, I can. So he had a gym class that was a combination of middle school and high school students. So what happens is the middle school students finish changing, they go to the actual gym, and then they wait on the high school students to finish changing. So the bell rings at 8.30, the incident happened around 8.35, usually the high school students take about 10 minutes to change. So he's in a gymnasium, and on either side of the gymnasium are the padded walls. And so basically a 12-year-old is running up the padded wall and seeing how high he can touch. And the petitioner in this case decides he too wants to get engaged, because apparently the students were essentially egging him on. So he runs up the wall once, comes down, and a 12-year-old says to him, oh, you think you can go any higher? And his exact testimony was something to the effect of, you know, he challenged me and I wanted to prove that I could. And then on the second run up the wall, he touches it as he's bouncing off the wall, he feels a pull on his Achilles. So basically he's accepting a challenge from a student, he's not instructing anybody. That's exactly right. And he testified consistently and multiple times that it was not part of the curriculum. He has a lot of leeway in setting the curriculum. He's never set the curriculum to run up the wall. You know, that sort of rapport with students is sort of an afterthought, essentially of, well, that's what I was doing, I was building rapport with my students. Well, can you build rapport in a different way? Yes, I can. The principal's like, yes, he can. Even the two examples the principal gave of watching him engage in activities in the past were specifically activities that were part of the curriculum. So the two examples he gave were jogging, when the students were jogging, or pitching during a wiffle ball game, when the activity on the curriculum that day was wiffle ball. So it was the argument that accepting a personal challenge from a student would be a personal risk. Correct. So just to go back to your original question, post-complainant in this case, we don't have, there is no dispute in the course of, he was at, it was time and place was there. It's really the arising out of element. And I think what the commission did appropriately was, because he's running up a matted wall and accepting challenges from 12-year-olds, they said at some point you voluntarily expose yourself to an unreasonable risk. That's not an employment-related risk. That's personal, and that's not compensable. Counsel, and I don't want to beat a dead horse, but I'm trying to verify if what activity I have in my mind's eye is accurate as to what occurred here. I had kids that went through junior high, and there was an, I would see them when they were warming up for basketball, where they would run towards a wall, jump up, and put a foot against the wall, and further elevate themselves so that their vertical leap would be enhanced, such that they might be able to dunk a basketball, whereas they couldn't if they were just jumping from the floor. Is that the activity that was being performed here? So, Justice Harris, great question. In his recorded statement, which is part of the record, he actually testifies, he described it to the insurance adjuster as running up a padded wall, Bo Jackson style, you know, like the pro outfielder would do. So, to your point, running up the wall, trying to scale the wall as high as he can touch, just like we see in the high-rate reel from Bo Jackson. And Bo Jackson was not a basketball player. We can take judicial notice of that, right? But he was a member. He had a stint in the MLB. So, but again, and I think we were talking about a professional baseball player, maybe that would be furthering the interest of the employer, because he's going up to catch a baseball. But in this case, he's really removed himself, I think, from his employment at that point. And that's what I think that, again, not part of the curriculum, egged on by students. Well, what does that have to do with this part of the curriculum? Was it prohibited activity? Was running up the matted wall prohibited activity? I mean, there must be a matted wall there for a reason, and that's for somebody to use it, right? I think it's probably to protect basketball players if they are running after a ball. Oh, so this actually is not an exercise program? No. I think it's probably there for basketball games where, you know, a person's chasing after a ball and they need something to stop themselves. Usually, they're on either end of the gym, I believe, for that purpose. So we've got a teacher allowing students to use something that isn't part of equipment, exercise equipment? Correct. And we have a teacher who would never have put scaling a padded wall as part of a curriculum. That would never be an activity that he would outline. In fairness to the other side, though, in fairness to the claimant, I mean, it may not be a regularly engaged in activity, but it is true that students will do that to loosen up to warm up, correct? I mean, it's not a prohibited activity, is it? No, I suppose there may not be a rule against it. Right. But to your point, I think, you know, originally, so we have 12 and 13-year-olds doing something, and I believe the question you posed to him, so if they challenge you to go do a backflip off, are you going to start doing it? That's really the issue, yeah. I agree. I think that's the issue. And I think, again, I think if we're on a manifest weight standard, the commission just said, the way we're inferring these various facts, which are not in dispute, is that it was this risk was a voluntarily unreasonable risk that this petitioner took. Would we even be here, I guess, to ask this question, if he wasn't accepting a challenge, if this was something they were all doing as part of an exercise program and he was doing it, that would put this case in a vastly different posture, wouldn't it? I don't disagree with you. Well, if this was a bothers me that the school would have something out there and allow people to use things, it seems almost negligence, doesn't it? But that's another story for another case. But so you've got a padded something that's used for a purpose other than for people running up, putting their foot on it and jumping. I think it's just a safety precaution. I think the padded wall is just a safety precaution. They also put pads against the wall just for storage. And then for PE purposes, they pull them off the wall, put them on the horizontal, in a horizontal position to be used for whatever it might be, wrestling, tumbling, whatever. In this case, was it established what the mats were used for and how they were to be used? That is not part of the record. So he's not demonstrating something that is an activity that presumably is an accepted physical education activity. Correct. That's absolutely correct. Is that a fair statement? Yes. Instead, he's accepting a challenge from a student-initiated, non-curriculum-based activity. Do you have any other questions for me? So is your theory that it's not in the coursework? No, I believe he was in the course of. I think the minute he undertakes this voluntary, unreasonable risk of chasing a 12-year-old up a scaled wall, that's why it does not arise out of his employment. In the course of, I believe he has. Why? The time and place is there. Why? Because the school class has started and he's in the gym and he's supposed to be in the gym. I think he can get that problem. I just don't think the arising out of. I don't see what he did that's in furtherance of the employer's interest in a form or fashion that's reasonable. So you're saying his activity, even the first time, because there were two times. Correct. So let's forget the second time. The first time, he took himself out of his employment? Correct. I believe that's when it stops arising out of his employment. I think it's just more obvious with the second one because of his response. I was challenged and I wanted to show him I could do it. Like, okay. That's why I think the commission was using words like showing off because that was the reasonable inference that they drew from that fact was, you were doing this for a reason personal to yourself. And it had nothing to do with your employment. It certainly was on the gauntlet of a personal challenge and he accepted a personal challenge. Correct. Isn't it a lot cleaner to say it wasn't in the course of and he took himself out? I just think of it in the course of as being time and place. And it was a school class. It was 835. The time that he put his foot on a piece of equipment that wasn't even to be used for that in the place isn't in his employment, is it? Okay. I don't think he can achieve time or arising out of it. How about that? So maybe he did remove himself in the course of his employment. Are you taking a subtle hint? I think he takes himself out of his employment in the course of when he steps on the wall. I think that's a very valid point and probably what the commission was getting at. Anything further? Nothing for me unless you have any additional questions. No. The court appears not to have any further questions. Thank you. Counselor, may we reply? Very briefly. I think to characterize this solely on the basis of whether or not this individual was performing a direction to a student would ignore in its entirety his job description and what he's charged with doing. In fact, the job description included a plethora of duties, including but not limited to creating a flexible subject matter program, class environment favorable to learning and personal growth, establishing effective rapport with pupils, motivating pupils to develop skills and attitudes, and knowledge, meeting and instructing assigned classes in the locations, designating, planning programs of development for the student's physical attributes, social skills, and lifelong activity skills. Let me ask you this example. What would you say to this? You're a driver's ed teacher and you're teaching the students. You're driving around and the student says, Mr. Jones, how fast can you go? Is that as fast as you can go? And he goes, I can control this car going 100 miles an hour. And he has an accident. What do you say to that? I mean, he's a driver. He's supposed to be driving his car as part of his class, right? I'd say that. I believe that a driver's ed teacher would be charged with teaching people to drive within the bounds of the law normally. And although the cases don't state that, I mean, they actually state the opposite. They say, well, you have a duty to perform what you're statutorily required to do. Okay. And how do we get around if that's true and that's the limit? And how do we get around the guy that was speeding down the highway, has a one-car accident, and he was still in furtherance of his employment? Okay? How do we get around that, Justice? Because we didn't take him out of the employment because obviously the employer knows he's supposed to be driving. And actually, this is going to sound ridiculous, but I was a trial judge in that case. Well, how do we get around the fact that that creates an unreasonable risk? No, because he's driving the car at the time of the accident. Yes. In furtherance of the employer's, but he's not driving in response to a personal challenge. Well, Mr. By some third party. Mr. Thompson here is part of teaching people to compete in sports is to be competitive, is it not, Justice? I mean, do you play sports to lose normally? Or do you accept a physical challenge when you engage in a sport? So that's the question. You know, you have a logical argument to make, but where would you draw the line? You conceded earlier that if you're, just because you're teaching a PE class, you know, doesn't mean you're going to do a parallel bars if you've never been at them. Where do you draw the line? Well, I didn't necessarily concede that. I said, if you're going to teach it, one would need to have to acquire the skill in order to do that. He's there. He's a teacher, Jim. Why couldn't he have the right to just do it because he is a gym teacher? Do any activity. Well, it's not. If you were demonstrating something to a child or imposing on them the importance of the skill and trying to teach them that this is a life skill. And he's demonstrating gymnastics to them that he's capable of demonstrating. I would say certainly that's within the course of his employment. It would certainly fit within this job description. Absolutely it would. But if he has no training, well, you would be negligent to try to do something that you have no training to do. Negligent wouldn't matter. Well, precisely. And that's exactly what we're doing here is trying to turn something into a negligent assessment when negligence is of no concern. The issue is, was he doing anything that furthered the employer's interest? He was. Not only did he testify so as a teacher and as an educational professional, so did his supervisor testify as such. We can't create an inference out of conjecture. There's no evidence in here saying that this was not consistent with his job description. In fact, quite the contrary. Even his boss says it was consistent with it. And in addition to that, one more point that I'd like to make. There is absolutely no evidence as to why these maps were here, there, or anything else in this record. How you could create an inference from that without evidence is beyond me. We do have to have some evidence to create an inference. You're right. That's yours, the record. You're right on that. I agree. Thank you. Time's up. Thank you, Counsel Bowles, for your arguments in this matter. This afternoon we'll take an advisement, a written disposition shall issue.